IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MOUNIR SHITA,

               Plaintiff,

    v.

STEVE TAYLOR,

               Defendant.

Case No.: 3:25-cv-00051-AN

OPINION AND ORDER

Self-represented plaintiff Mounir Shita brings this action against defendant Steve Taylor, alleging trade secret misappropriation in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, and state law claims for conversion, breach of fiduciary duty, and tortious interference. On January 10, 2025, plaintiff filed his initial complaint, as well as an *ex parte* motion to seal the case, an application for leave to proceed in forma pauperis ("IFP"), and motion for temporary restraining order ("TRO") and preliminary injunction. On January 21, 2025, the Court dismissed plaintiff's complaint and denied plaintiff's motions and IFP application. On January 27, 2025, plaintiff filed renewed motions but did not file an amended complaint or a renewed IFP application; accordingly, the Court denied plaintiff's renewed motions.

On February 5, 2025, plaintiff filed an amended complaint, second renewed *ex parte* motion to seal, second IFP application, and second renewed *ex parte* motion for TRO. Defendant has not been served or appeared in this case. Plaintiff's IFP application is hereby GRANTED. Further, plaintiff is ordered to show cause in writing by March 17, 2025, why the amended complaint should not be dismissed for failure to state a claim and for lack of subject matter jurisdiction. Alternatively, plaintiff may file a second amended complaint by that date curing the defects outlined below. Finally, for the reasons set forth below, plaintiff's motions are DENIED.

## BACKGROUND

This action arises from the parties' dispute over the ownership and direction of EraNova

Global ("EraNova") and its development of artificial general intelligence ("AGI") technology.  In his amended complaint, plaintiff alleges the following.  Over twenty-seven years, he "developed a revolutionary approach to AGI based on quantum mechanics and general relativity theories, distinctly different from current mainstream [artificial intelligence] approaches."  Am. Compl., ECF [14], ¶ 11.  In November 2024, he incorporated EraNova Global ("EraNova") "to explore commercialization opportunities while maintaining personal ownership of all intellectual property."  *Id.* ¶ 13.  Defendant was a co-founder of EraNova "but was never granted any ownership rights to the underlying AGI technology."  *Id.* ¶ 14.

On December 15, 2024, following disagreements over EraNova's direction, plaintiff emailed defendant proposing two potential paths forward.  *Id.* ¶ 15 (citing *id.* Ex. A).  On December 16, 2024, defendant "responded with unauthorized demands[.]"  *Id.*  On December 18, 2024, plaintiff "terminated [d]efendant's involvement" in EraNova, to which defendant "threatened $1.5 million in retaliatory penalties if [p]laintiff sought legal protection[.]"  *Id.*  On December 20, 2024, plaintiff sent a warning email regarding deletion of trade secrets, and defendant "falsely claimed ownership rights" over those trade secrets.  *Id.*  On January 24, 2025, "[e]vidence emerged that [d]efendant's system was compromised[.]"  *Id.* ¶ 16.  On February 4, 2025, plaintiff "received confirmation that [d]efendant is actively recruiting third parties to work on the AGI technology[.]"  *Id.*

Plaintiff's proposed TRO bars defendant and all persons acting in concert with him from "[u]sing, disclosing, or misappropriating [p]laintiff's trade secrets and proprietary AGI technology"; "[c]laiming any ownership, authority, or control over [p]laintiff's intellectual property"; "[e]ngaging in any development activities that would require disclosure of [p]laintiff's trade secrets to third parties"; and "[d]estroying, altering, concealing, or transferring any materials containing [p]laintiff's trade secrets."  Renewed Ex Parte Mot. for TRO ("Mot. for TRO"), ECF [16], at 15.  The proposed order also requires defendant to "[p]reserve all physical and electronic materials containing or relating to [p]laintiff's trade secrets"; "[i]dentify any third parties to whom he has disclosed or intends to disclose [p]laintiff's trade secrets"; "[c]ease using any email addresses or signatures suggesting authority over [p]laintiff's

technology"; and "[p]rovide a complete accounting of all locations where trade secret information may be stored." *Id.* Plaintiff also requests a waiver of the security requirement. *Id.*

## DISCUSSION

### A.    Sufficiency of Complaint

#### 1.    *Failure to State a Claim*

When a complaint is filed by a plaintiff proceeding IFP, the court must dismiss the case if it determines that the action is frivolous or malicious, fails to state a claim on which relief can be granted, or if the defendant is immune to monetary relief. 28 U.S.C. § 1915(e)(2)(B). The standard used under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim is the same as the Federal Rule of Procedure ("FRCP") 12(b)(6) standard. *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (citing *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000)).

To survive a FRCP 12(b)(6) motion to dismiss for failure to state a claim, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). The court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). Bare assertions that amount to mere "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. In ruling on a FRCP (12)(b)(6) motion to dismiss, a court may "consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (per curiam) (citation omitted).

The court must construe pleadings by self-represented plaintiffs liberally "and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988) (citation omitted), *aff'd*, 15 F.3d 1086 (9th Cir. 1994). Before dismissing a complaint, a court must give a

statement of the complaint's deficiencies and must give leave to amend the complaint unless it is "absolutely clear" that the deficiencies could not be cured by amendment. *Id.* (internal quotation marks omitted) (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987), *superseded by statute on other grounds as stated in Lopez v. Smith*, 160 F.3d 567, 570 (9th Cir. 1998), *rev'd and remanded on other grounds*, 203 F.3d 1122 (9th Cir. 2000)), *abrogated on other grounds as stated in Cuviello v. City & Cnty. of San Francisco*, 940 F. Supp. 2d 1071, 1090 (N.D. Cal. Apr. 15, 2013).

      a.     Trade Secret Misappropriation Claim

      To state a claim for trade secret misappropriation under the Defend Trade Secrets Act ("DTSA"), "a plaintiff must allege that: (1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877, 883 (N.D. Cal. 2018).

      The DTSA defines trade secrets as "all forms and types of financial, business, scientific, technical, economic, or engineering information[.]" 18 U.S.C. § 1839(3). To allege the existence of a trade secret, a plaintiff must demonstrate that (1) the information is not "readily ascertainable through proper means" and (2) "derives independent economic value," and (3) the plaintiff took "reasonable measures to keep such information secret[.]" 18 U.S.C. § 1839(3)(A)-(B). A plaintiff must identify a trade secret with sufficient particularity. *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1144 (N.D. Cal. 2019). "'A plaintiff need not spell out the details of the trade secret,' but must 'describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.'" *Id.* (footnote and citation omitted). To determine whether a plaintiff sufficiently identified a trade secret, a court examines "(1) whether something beyond general knowledge is being claimed and (2) whether there is enough specificity to put the defendant on notice regarding the nature of the trade secret." *Beluca Ventures LLC v. Einride Aktiebolag*, 660 F. Supp. 3d 898, 909 (N.D. Cal. 2023) (citation omitted).

      Here, plaintiff has not identified his purported trade secrets with sufficient particularity.

Plaintiff alleges that he "developed a revolutionary approach to AGI based on quantum mechanics and general relativity theories, distinctly different from current mainstream AI approaches" and that he incorporated EraNova "to explore commercialization opportunities" regarding that AGI technology. Am. Compl. ¶¶ 11, 13. However, plaintiff does not name a single trade secret relating to the AGI technology that was allegedly misappropriated, let alone describe the trade secret with any particularity. The most specific of plaintiff's allegations provides:

> "Plaintiff's AGI technology constitutes trade secrets within the meaning of 18 U.S.C. § 1839(3) because: a. It derives independent economic value from not being generally known or readily ascertainable; b. Plaintiff has taken reasonable measures to maintain its secrecy; c. The technology is used in interstate commerce through Internet-based applications; d. The technology has been specifically validated by senior U.S. intelligence officials as having strategic significance[.]"

Am. Compl. ¶ 18. These vague assertions are not "sufficient to ascertain at least the boundaries within which the [alleged trade] secrets lie and the scope of appropriate discovery." *Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d 1024, 1049 (N.D. Cal. 2020) (internal quotation marks and citation omitted); *see Vesta Corp. v. Amdocs Mgmt. Ltd.*, No. 14-cv-1142-HZ, 2018 WL 830141, at *3 (D. Or. Feb. 12, 2018) (citation omitted) ("The reasonable particularity standard required [the] [p]laintiff to provide specific references to concrete documents and characteristics of its trade secrets."). Moreover, plaintiff merely states in a conclusory manner that the AGI technology "derives independent economic value from not being generally known or readily ascertainable" and that he "has taken reasonable measures to maintain its secrecy." Am. Compl. ¶ 18. Plaintiff fails to allege any facts to support these conclusory allegations, which are merely a recitation of the elements of a DTSA claim. Accordingly, plaintiff has not alleged facts to adequately state a trade secret misappropriation claim under the DTSA.

      b.     Conversion Claim

      Under Oregon common law, "[c]onversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Scott v. Jackson County*, 244 Or. App. 484, 499, 260 P.3d 744 (2011) (internal quotation marks omitted) (quoting Restatement (Second) of Torts § 222A

(1965)); *see Mustola v. Toddy*, 253 Or. 658, 664, 456 P.2d 1004 (1969).  To state a claim for conversion, a plaintiff must allege that they were "entitled to immediate possession of [the] chattel" at issue.  *Willamette Quarries, Inc. v. Wodtli*, 308 Or. 406, 413, 781 P.2d 1196 (1989) (en banc) (internal quotation marks omitted) (quoting *Artman v. Ray*, 263 Or. 529, 531, 501 P.2d 63 (1972)).  "'Bad faith is not required; the gravamen of the tort is the defendant's intent to exercise control over the chattel inconsistently with the plaintiff's rights.'"  *K.F. Jacobsen & Co. v. Gaylor*, 947 F. Supp. 2d 1120, 1128 (D. Or. 2013) (quoting *Naas v. Lucas*, 86 Or. App. 406, 409, 739 P.2d 1051 (1987)).

Plaintiff alleges that he has "the right to possession of all AGI technology, related documentation, and trade secrets" and that defendant "was never granted any ownership rights to the underlying AGI technology." Am. Compl. ¶¶ 13, 22.  Plaintiff also alleges that "[d]efendant has wrongfully exercised dominion over [p]laintiff's property by: a. Refusing to return materials containing trade secrets; b. Claiming unauthorized ownership rights; c. Attempting to transfer or license the technology to others." *Id.* ¶ 23.[1]  Viewing the facts in the light most favorable to plaintiff, defendant's refusal to return plaintiff's property, claiming of ownership rights, and attempts to transfer the technology to third parties together demonstrate an "intent to exercise control over the [technology, related documentation, and trade secrets] inconsistently with [] plaintiff's rights." *K.F. Jacobsen & Co.*, 947 F. Supp. 2d at 1128 (internal quotation marks and citation omitted).  Accordingly, at this stage, plaintiff has adequately stated a claim of conversion.

c.    Breach of Fiduciary Duty Claim

To state a claim for breach of fiduciary duty under Oregon law, a plaintiff must allege the existence of a fiduciary relationship between the parties, breach of a fiduciary duty arising out of that relationship, and damage resulting from that breach. *Evergreen W. Bus. Ctr., LLC v. Emmert*, 254 Or. App. 361, 367, 296 P.3d 545 (2012) (citation omitted), *rev'd on other grounds*, 354 Or. 790, 323 P.3d 250 (2014) (en banc).  "[A] fiduciary duty exists only where the parties are in a 'special relationship' in which one party

---

[1] The amended complaint contains two paragraphs numbered twenty-three.  The Court cites the second reference setting forth part of plaintiff's conversion claim.

is obliged to pursue the other party's best interests." *Spada Props., Inc. v. Unified Grocers, Inc.*, 121 F. Supp. 3d 1070, 1090 (D. Or. 2015) (quoting *Conway v. Pac. Univ.*, 324 Or. 231, 237, 924 P.2d 818 (1996)). In determining whether such a relationship exists:

> "The focus [of the court's inquiry] is not on the subject matter of the relationship, such as one party's financial future; nor is it on whether one party, in fact, relinquished control to the other. The focus instead is on whether the *nature of the parties' relationship itself* allowed one party to exercise control in the first party's best interests. In other words, the law does not imply a tort duty simply because one party to a business relationship begins to dominate and to control the other party's financial future. Rather, the law implies a tort duty only when that relationship is of the type that, by its nature, allows one party to exercise judgment on the other party's behalf."

*Bennett v. Farmers Ins. Co.*, 332 Or. 138, 161-62, 26 P.3d 785 (2001) (alteration and emphasis in original) (citing *Conway*, 324 Or. at 241).

Plaintiff alleges that defendant was a co-founder of EraNova and thus "owed fiduciary duties to both the company and [p]laintiff." Am. Compl. ¶ 26. Plaintiff alleges that "[d]efendant breached these duties by: a. Attempting to usurp corporate opportunities; b. Engaging in self-dealing; c. Acting contrary to [p]laintiff's interests regarding the AGI technology." *Id.* ¶ 27. However, plaintiff does not provide any facts, such as plaintiff and defendant's roles within EraNova, that would allow the Court to determine whether a fiduciary relationship existed between plaintiff and defendant such that one party is obliged to pursue the other party's best interests. The Court has found no case law that supports either the argument that defendant and plaintiff have a fiduciary relationship simply because they co-founded a company together, or that defendant owes fiduciary duties to plaintiff because he co-founded a company with him. Moreover, even assuming that a fiduciary relationship existed, plaintiff does not allege any facts to support his assertions that defendant attempted to usurp corporate opportunities, engaged in self-dealing, or acted contrary to plaintiff's interests regarding the AGI technology. Accordingly, plaintiff has not alleged sufficient facts to state a claim of breach of fiduciary duty.

       d.     Tortious Interference Claim

"To state a claim for tortious interference with economic relations, plaintiff must allege facts that, if taken as true, establish: (1) the existence of a professional or business relationship;

(2) intentional interference with that relationship; (3) by a third party; (4) accomplished through improper means or for an improper purpose; (5) a causal effect between the interference and damage to the economic relationship; and (6) damages." *Silkett v. Royal Crown Cola Bottling Co. of N. Bend*, 151 Or. App. 187, 189-90, 947 P.2d 626 (1997) (citing *McGanty v. Staudenraus*, 321 Or. 532, 535, 901 P.2d 841 (1995)).

Here, plaintiff alleges only that defendant "intentionally interfered with [plaintiff's business] relationships by: a. Making false claims of ownership; b. Attempting to redirect business opportunities; c. Threatening to disclose trade secrets to third parties." Am. Compl. ¶ 31. Plaintiff does not identify any contract or prospective economic advantage or allege any other facts that would allow the Court to find that a business relationship exists, much less one that defendant, as a third party, has intentionally interfered with. Nor does plaintiff allege facts to demonstrate any improper means or improper purpose or any causal effect between the supposed interference and damage to a business relationship. Accordingly, plaintiff has not alleged sufficient facts to state a claim for tortious interference with economic relations.

2.    *Lack of Subject Matter Jurisdiction*

Federal courts are courts of limited jurisdiction and must have subject matter jurisdiction to preside over claims. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). A federal court's original jurisdiction must be based on either federal question jurisdiction under 28 U.S.C. § 1331 for "all civil actions arising under the Constitution, laws, or treaties of the United States" or diversity jurisdiction over civil actions under 28 U.S.C. § 1332(a) where the "matter in controversy exceeds the sum or value of $75,000" and the action is between "citizens of different States." The party seeking to invoke diversity jurisdiction bears the burden of pleading and proving that diversity jurisdiction exists. *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 613-14 (9th Cir. 2016) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215,231 (1990)). "[T]he amount in controversy is determined from the face of the pleadings." *Geographic Expeditions, Inc. v. Est. of Lhotka*, 599 F.3d 1102, 1106 (9th Cir. 2010) (internal quotation marks and citation omitted).

As described above, the only claim that plaintiff has plausibly stated is his state law

conversion claim. Therefore, plaintiff must establish that diversity jurisdiction exists. However, plaintiff alleges that both he and defendant reside in Oregon. Am. Compl. ¶¶ 6-7. In terms of damages for his conversion claim, plaintiff states that defendant's actions "have caused [p]laintiff substantial damages" but does not allege that the amount in controversy is greater than $75,000. *Id.* ¶ 24. Accordingly, plaintiff's allegations are insufficient to invoke the Court's diversity jurisdiction over his remaining claim.

**B.    Motion for Temporary Restraining Order**

Even if the amended complaint were sufficient, the circumstances in this case do not warrant a temporary restraining order. Temporary restraining orders and preliminary injunctions are governed by the same legal standard. *See* Fed. R. Civ. P. 65; *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977); *Don't Shoot Portland v. City of Portland*, 465 F. Supp. 3d 1150, 1154 (D. Or. 2020) (citation omitted) (collecting cases) (calling the standards "essentially identical"). A plaintiff seeking a temporary restraining order must show (1) they are "likely to succeed on the merits"; (2) they are "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [the plaintiff's] favor"; and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20-22 (2008) (citations omitted) (collecting cases).

A court may issue an *ex parte* temporary restraining order without notice to the adverse party only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ P. 65(b)(1)(A)-(B). The circumstances under which courts will issue *ex parte* temporary restraining orders are "extremely limited" because "'our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute.'" *Reno Air Racing Ass'n. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 438-39 (1974)). Courts have recognized that issuing an *ex parte* temporary restraining order may be appropriate in the limited circumstances "where notice to the adverse party is impossible

9

either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing" or "because notice to the defendant would render fruitless the further prosecution of the action." *Id.* (internal quotation marks and citation omitted).

Plaintiff argues that *ex parte* relief is necessary because "[d]efendant would likely respond to notice of these proceedings []by taking immediate actions to frustrate the purpose of this lawsuit." Mot. for TRO 4. Plaintiff alleges that when he attempted to assert control over his trade secrets, defendant "responded with a calculated threat" that defendant would "demand $1.5 million in retroactive fees" if plaintiff succeeded in this action. *Id.* at 3. Plaintiff asserts that this threat "was an explicit attempt to coerce [p]laintiff into abandoning legal protection of his intellectual property by threatening ruinous financial consequences for winning." *Id.* at 4. Additionally, plaintiff alleges that "[g]iven [d]efendant's demonstrated pattern of retaliation and current recruitment of developers," notice would allow defendant to "[a]ccelerate disclosure of trade secrets to third parties[,]" "[d]estroy or conceal evidence[,]" "[t]ransfer sensitive files[,]" and otherwise retaliate against him. *Id.* Plaintiff further argues that "extraordinary U.S. intelligence interest creates immediate personal danger to [p]laintiff" because defendant's disclosure of portions of the AGI technology with third parties will likely cause "foreign intelligence agencies" to "target [p]laintiff more aggressively since [plaintiff] possesses the complete technology." *Id.* at 5. Plaintiff argues that this risk is heightened because the AGI technology "was specifically validated as 'bona fide general artificial intelligence poised to disrupt most things in our economy/world' by senior U.S. intelligence officials." *Id.* at 6. Finally, plaintiff argues that security risks will continue to arise from any further disclosure of trade secrets because of "[e]vidence that [d]efendant's systems are already compromised[,]" "[t]he documented interest of sophisticated state actors[,]" and "[t]he strategic significance of AGI technology in current geopolitical competition." *Id.* at 7.

The circumstances of this case are not among the "very few circumstances justifying the issuance of an ex parte TRO." *Reno Air Racing Ass'n., Inc.*, 452 F.3d at 1131. Notice to defendant is not impossible. Although plaintiff has not yet served defendant or given him notice of the action, plaintiff has listed defendant's address in previous filings. Moreover, providing notice to defendant would not render

fruitless further prosecution of the case.  Plaintiff's assertions of likely accelerated disclosure of trade secrets, destruction of evidence, and retaliation by defendant are wholly speculative.  Contrary to plaintiff's assertions, an allegedly spoofed email and a message on a social networking site by an unknown sender introducing plaintiff to an unknown recipient demonstrate neither breaches to defendant's "systems" nor "validation" of the AGI technology by U.S. or foreign intelligence agencies.  *See* Mot. for TRO Exs. G, J. Plaintiff does not allege any facts to allow the Court to find that defendant would frustrate the purpose of this lawsuit if given notice.  Accordingly, issuing an *ex parte* temporary restraining order is not warranted.

As for the *Winter* factors, plaintiff argues that he is likely to succeed on the merits of his trade secret misappropriation claim under the DTSA because the AGI technology constitutes legal protected trade secrets validated by U.S. intelligence agencies, and defendant has misappropriated these trade secrets by retaining and claiming ownership over the trade secrets and recruiting developers to implement the AGI technology.  Plaintiff also argues that he will suffer immediate and irreparable harm because defendant is currently recruiting developers and implementation of the AGI technology will require disclosure of trade secrets; "[d]efendant's system has been breached," which "enables unauthorized access to trade secrets"; and the "[c]urrent geopolitical climate heightened risks" and "[e]ach disclosure [of trade secrets] creates new attack vectors." *Id.* at 8-9.  Plaintiff further argues that the balance of equities heavily favors granting relief because defendant would not suffer legitimate harm from being prevented from misappropriating trade secrets that he has no right to possess, and "[a]ny claimed hardship stems entirely from [defendant's] own wrongful conduct[.]" *Id.* at 9.  Finally, plaintiff argues that the public interest strongly favors protecting "validated sensitive technology from unauthorized disclosure" because of the "documented interest of U.S. intelligence agencies[,]" "strategic significance of AGI technology[,]" and "need to prevent improper coercion and protect technologies with national security implications." *Id.* at 9-10.

Even if the Court could issue a temporary restraining order *ex parte*, a temporary restraining order is not warranted in these circumstances.  As explained above, at this stage plaintiff has failed to even state a plausible claim of trade secret misappropriation under the DTSA, let alone demonstrate that he is likely to succeed on the merits of such a claim.  Plaintiff also fails to allege any facts to support

his remaining assertions.  Accordingly, the Court denies this motion, including plaintiff's request for *in camera* review.

**C.    Motion to Seal**

Plaintiff also fails to articulate any compelling reasons to seal this case.  Courts "recognize a general right to inspect and copy public records and documents, including judicial records and documents."  *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (footnotes omitted). As a result, there is "a strong presumption in favor of access to court records."  *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003) (citations omitted).

A party seeking to seal a judicial record "must articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process."  *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006) (internal quotation marks, alteration, and citations omitted).  The court must then "'conscientiously balance[] the competing interests' of the public and the party who seeks to keep certain judicial records secret."  *Id.* at 1179 (alteration in original) (quoting *Foltz*, 331 F.3d at 1135).  The court has discretion to determine whether compelling reasons exist; examples include where judicial records "might have become a vehicle for improper purposes, such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets."  *Id.* (internal quotation marks and citations omitted).

Plaintiff seeks to seal the entire case for forty-five days; file redacted versions of court documents with sensitive technical and security information that will remain redacted for ten years; and permanently seal plaintiff's application to proceed IFP.  Plaintiff argues that "malicious actors are already attempting to access the technology through multiple vectors."  Renewed Ex Parte Mot. to Seal, ECF [13], at 5.  Additionally, plaintiff argues that an "exponential increase in state-sponsored technology theft attempts makes protection particularly critical for AGI technology that has been specifically validated by U.S. intelligence agencies."  *Id.* at 5-6.  Plaintiff further argues that he has "additional sensitive evidence" that the Court should review *in camera*.  *Id.* at 6-7.  Plaintiff argues that redaction alone would be

insufficient because "redacted filings would draw heightened attention from intelligence services," which would in turn "increase[] targeting of individuals associated with the technology through cyber operations or other means." *Id.* at 7. Finally, plaintiff seeks to permanently seal his IFP application because the information therein "would provide adversaries with data points for developing targeting profiles[,]" and "[p]revious attempts to influence [p]laintiff's work included sophisticated social engineering operations using detailed personal and financial profiling[.]" *Id.* at 8.

Again, plaintiff fails to present any compelling reasons or factual findings to support his broad requests to seal and redact. As for the request to seal the entire case for forty-five days, there is no evidence of "U.S. intelligence interest," "validation" of the AGI technology, or "active attempts to compromise the technology." *Id.* at 5-6. As stated above, an allegedly spoofed email is not evidence of compromises to defendant's "system" or "unauthorized access to confidential communications." *Id.* at 5. As for the request to redact documents, plaintiff has not filed any documents regarding his alleged trade secrets that might justify redaction, nor has he submitted any proposed redactions. As for the request to permanently seal his IFP application, there is no evidence that the information in that document "would provide adversaries with data points for developing targeting profiles." *Id.* at 8. Plaintiff continues to make only speculative, conclusory assertions that he or the AGI technology will be subject to safety risks or targeted by alleged foreign actors. Because plaintiff does not articulate any compelling reasons to seal, he cannot overcome the presumption in favor of public access to judicial records. *See Kamakana*, 447 F.3d at 1178-79. Accordingly, the Court also denies this motion, including plaintiff's request for *in camera* review.

**CONCLUSION**

For the foregoing reasons, plaintiff's IFP application, ECF [15], is GRANTED, and plaintiff's Renewed Ex Parte Motion for Temporary Restraining Order, ECF [16], and Renewed Ex Parte Motion to Seal, ECF [13], are DENIED.  The Court orders plaintiff to show cause in writing by March 17, 2025, why the Amended Complaint, ECF [14], should not be dismissed for failure to state a claim and for lack of subject matter jurisdiction.  Alternatively, plaintiff may file a second amended complaint curing the defects outlined above by that date.

IT IS SO ORDERED.

DATED this 14th day of February, 2025.

Adrienne Nelson
United States District Judge